UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

ALVIN WAYNE LAWSON and                          CIVIL ACTION
ANGELA BONVILLAIN LAWSON
                                                NO.  07-5421
VERSUS

LOCKHEED MARTIN CORP.                           SECTION  "N"  (3)

# O R D E R   &   R E A S O N S

Before the Court are two motions: Defendant's Motion for Summary Judgment (Rec. Doc.

13), in which Lockheed Martin Corporation argues that it is entitled to judgment as a matter of law

because it has breached no duty to Plaintiffs, did not instruct Lawson to engage in the activity that

caused the alleged harm, and because Lawson's actions contributed to his injuries; and Defendant's

Motion for Summary Judgment  (Rec. Doc. 30), in which Lockheed Martin argues that it is entitled

to judgment as a matter of law because any injury to Lawson resulted from the negligence of his

employer, for which it is not responsible.[1]  Both motions are opposed. After considering the

pleadings, the memoranda, and the applicable law, **IT IS ORDERED** that the motions are hereby

**DENIED**.

## I. BACKGROUND

On August 13, 2006, Alvin Wayne Lawson–an employee of Logistics Express, Inc.

("Logex")–was engaged in refilling storage tank #3 (Building 175) at the NASA-Michoud Assembly

Facility in New Orleans, Louisiana. The facility is owned by NASA, but is maintained by Lockheed

---

[1] The two motions overlap to a considerable degree. For example, Lockheed Martin's argument in its first motion about Logex instructing Lawson to stand on the pipe is repeated in the second motion. The Court thus finds it advisable to organize this Order around the arguments raised, rather than addressing the whole of each brief in turn.

Martin, which has control of its equipment and operations. The evidence suggests that the vast majority, if not all, of the personnel at Michoud are Lockheed employees.

Tank #3 held liquid nitrogen and was situated atop a concrete pad, with a pipe carrying the liquid nitrogen from the tank to the assembly facility. The liquid nitrogen carried through the pipe formed ice on its surface, which continually melted in the sun, dripping water onto the pad below. This constant dripping made the concrete pad wet and encouraged the growth of slippery algae on the concrete.

To refill the tank Lawson had to turn a relief valve located eight feet off the ground. The tank was accessed and refilled several times weekly, and it was the common practice of both Lockheed employees and the employees of independent contractors such as Lawson to stand upon a pipe that was approximately 20 inches off the ground to reach up and turn the valve. In fact, Lawson had been trained by his employer to do so. On the date in question, Lawson approached the tank wearing steel toe boots and a face mask, stepped up on the pipe, and reached for the valve. At that moment, a wasp flew into his mask, causing him to swat at the air, lose his balance, and fall backwards on his coccyx and back. Safety personnel at the facility reported seeing water and mud on the back of his shirt and pants. Medical treatment was rendered, and then Lawson finished refilling the tank, gathered up his hoses and other equipment, and drove away. Later, however, he allegedly experienced pain in his coccyx and lower back and sought the care of a doctor.

Lawson filed the instant suit in the Civil District Court for the Parish of Orleans, claiming injury to his back, coccyx, spine, and abdomen, sexual and urinary dysfunction, pain and suffering, disability, and loss of enjoyment of life, among other injuries. His wife Angela claims loss of consortium. Lawson's complaint alleges that Lockheed breached a duty of care to him on two

2

grounds: by failing to lower the relief valve so that it was accessible without standing upon the frozen pipe, and by failing to provide a dry or non-slip surface around the tank, since the wet and algae he had to wade through to get to the tank contributed to his fall by making his boots slick. Lockheed Martin removed the case to this Court on September 5, 2007.

## II. ANALYSIS

### A. Summary Judgment Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *see also Lavespere v. Liberty Mut. Ins. Co.*, 910 F.2d 167, 178 (5th Cir. 1990). Once the moving party carries its burden pursuant to Rule 56(c), the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Auguster v. Vermillion Parish*

*School Bd.*, 249 F.3d 400, 402 (5th Cir. 2001).

When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana*, 294 F.3d 755, 758 (5th Cir. 2002), and draws all reasonable inferences in favor of that party. *Hunt v. Rapides Healthcare System, L.L.C.*, 277 F.3d 757, 764 (2001). Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *See id.* (emphasis in original) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."). Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims. *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994).

The nonmovant's burden of demonstrating a genuine issue is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence." *Little*, 37 F.3d at 1075. Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier

4

of fact to find for the nonmoving party. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir. 2002).

**B. Did Lockheed Breach a Duty to Lawson?**

Under Louisiana law, a defendant is answerable in negligence for the damage occasioned

by things in his custody. *See* LA. CIV. CODE art. 2317. To prevail on a negligence claim,

> affirmative answers must be given to these questions: (1) given the relationship and
> circumstances of the parties, does the law impose upon the defendant a duty of
> reasonable conduct for the benefit of the plaintiff, the violation of which is
> considered to be fault? (2) If the defendant owed such a duty, did his conduct fall
> short of the standard and come within the scope set by law? (3) Did the defendant's
> negligence in fact cause damage to the plaintiff ('cause in fact')? (4) Should any of
> the damage to the plaintiff be ascribed in law to the defendant, and, if so, should the
> defendant be held liable for every kind of damage done to each of plaintiff's interests
> ('legal cause')?

*Pitre v. Opelousas Gen'l Hosp.*, 530 So.2d 1151, 1155 (La. 1998). Defendants generally have no

duty to protect against an open and obvious hazard, and if the facts of a particular case show that the

complained-of condition should be obvious to all, the condition may not be unreasonably dangerous

and the defendant may owe no duty to the plaintiff. *Hutchinson v. Knights of Columbus, Council No.

5747*, 866 So.2d 228, 234 (La. 2004). Whether a condition is unreasonably dangerous requires

consideration of: (1) the utility of the complained-of condition; (2) the likelihood and magnitude of

harm, which includes the obviousness and apparentness of the condition; (3) the cost of preventing

the harm; and (4) the social utility and dangerousness of the plaintiff's activities. *Id.*

Lockheed Martin argues that it has no duty to warn of the "open and obvious risks associated

with standing on a frozen metal pipe and swatting at a wasp." Mem. at 2. (Rec. Doc. 13).[2] It points

---

[2] Lockheed Martin's brief makes much of the fact that Lawson slipped while swatting at
a wasp, calling it "the most important fact" about the accident. Mem. at 4. The Court is unable to
discern why the presence of the wasp and the Plaintiff's reaction to it has anything to do with the
dangers associated with standing on a frozen pipe in wet boots, where it is entirely foreseeable
that someone might slip whether there was a wasp or not. Indeed, there is evidence that

to a number of Louisiana cases where risks have been found to be so open and obvious that a reasonable factfinder could not possibly find that a defendant breached a duty to plaintiff. Reviewing these cases (and others that the Court has reviewed on its own initiative), the Court is not convinced of their applicability to the facts of this case.

Plaintiff especially points to *Stiebling v. Romero*, 974 So.2d 752 (La. App. 2007), a case whose facts superficially resemble those of the instant case. In *Stiebling*, a woman who was hired to pack up salvageable items from a Katrina-damaged house prior to its demolition was injured when a water-logged nightstand that she was using as a ladder collapsed underneath her. *Id.* at 754-56. Defendants argued that the woman "fell because she knowingly and voluntarily climbed up on a nightstand that was not meant to be a ladder, wearing wet shoes, and fell solely because of her own carelessness." *Id.* at 755. The trial court granted the Romeros' motion for summary judgment on the grounds that the "obvious, potential danger of standing on the nightstand obviated any duty to warn plaintiff not to stand on the nightstand," *id.* at 757, which conclusion was upheld on appeal. But *Stiebling* is distinguishable from the present case, most obviously as regards the setting. The plaintiff in *Stiebling* was packing up items in a damaged, flooded home that was scheduled to be demolished. Every piece of furniture in the house was potentially dangerous to stand upon, a fact that should have been obvious to plaintiff. By contrast, there is little or no evidence that suggests that Lawson should have been aware, when he arrived that day to fill the storage tank, that he was entering an

---

Lockheed employees had previously noted the presence of the wasps around the storage tank, which tends to cut against Defendant's argument that it had no duty to Lawson, since it makes it more likely that someone would be distracted by a wasp while reaching for the relief valve. *See* Opp. at Ex. C (Howitt deposition, pp. 38-39). The important issue is whether standing on the pipe *itself* is so obviously dangerous that Lockheed Martin had no duty to warn of the danger or correct the condition, wasp or no wasp.

environment in which it was likely that he would slip, fall, and suffer an injury. Additionally, the defendant in *Stiebling* did not create the condition that caused the injury, unlike the instant case, where it is undisputed that Lockheed Martin had control of the placement of the relief valve. Further, given the facts of *Stiebling*–packing items inside hurricane-damaged homes that more than likely were unoccupied and where the homeowner likely had little or no control over conditions at the site–it is reasonable to conclude that the homeowner could reasonably expect the *contractor* to provide whatever equipment was required to safely complete the job. In this case, however, given the nature of the work done at Michoud and especially the frequency with which the tanks were refilled, the relative positions of the parties, Lockheed's control of the site, and the nature of the work Lawson was required to do, it would be reasonable for a juror to conclude that in this case Lockheed Martin, *not* Lawson or his employer, had the burden of providing whatever equipment or conditions were necessary to safely accomplish the task of filling the storage tank.

Additionally, there is substantial evidence in the record to suggest that the danger of standing on the pipe was not at all obvious. In his investigative report filed shortly after the incident, a Lockheed Martin safety officer noted that it was the "accepted practice" of Lockheed employees to stand on the pipe to reach the valve. Opp. at Ex. A (Rec. Doc. 35). This officer learned this information by interviewing Lockheed employees, who reported that when work was done on the tank, the standard method of reaching the relief valve was to stand on the pipe, and that "'[n]obody's fallen before. So we don't have any issues.'" Opp at Ex. C. (Howitt deposition, pp.89-90). This conclusion was echoed by the plant manager, a Lockheed Martin employee, who agreed that he had never given any thought to the safety issues around accessing the valve. *See* Opp. at Ex. B (Soden

7

deposition, pp. 83-84).[3] There is no evidence that suggests that anyone at Lockheed ever gave any thought to the potential dangers of having employees stand upon the pipe to access the relief valve. To grant Defendant's motion, the Court would have to conclude that Lockheed deliberately subjected its *own* employees to the open and obvious danger of standing on the pipe without either warning about the danger or attempting to remediate it. The Court is unwilling to draw such a conclusion.

## C. Is Lockheed Martin Liable for the Negligence of an Independent Contractor?

Lockheed also argues that it cannot be liable for Lawson's injuries because Lawson was an employee of Logex, which trained him to stand upon the pipe and did not provide him with the tools he needed to fill the tank safely. Lockheed points to state and federal cases holding that under Louisiana law, the owner or operator of a premises has no duty to remedy hazards created by independent contractors. *See, e.g.*, *Zephrin v. Conoco Oil Co., Inc.*, 884 F.2d 212, 213 (5th Cir. 1989); *Grammer v. Patterson Services, Inc.*, 860 F.2d 639 (5th Cir. 1988); *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 658 (5th Cir. 1987); *Davenport v. Amax Nickel, Inc.*, 569 So.2d 23 (La. App. 1990). Lockheed argues that Logex created the hazard by instructing Lawson to stand upon the pipe and by not providing him equipment, such as a ladder, that would allow him to access the valve safely.

---

[3] The Court is aware that this line of reasoning leads to a somewhat paradoxical conclusion: The danger was not obvious, and yet Lockheed Martin may be liable because it did nothing to rectify this non-obvious danger it and its employees never considered. To a certain extent, this is a tension inherent in tort law and not specific to this case or this state. Further, after reviewing a number of "open and obvious danger" cases, it is clear that in a comparative fault state such as Louisiana, what the finding of obviousness amounts to is a determination that given all the circumstances, the defendant's quantum of fault approaches 0 percent. Certainly, that seems to be the conclusion driving such cases as *Stiebling*, *Hutchinson*, and *Jaggers v. Free State Tool Corp.*, 571 So.2d 808 (La. App. 1990), another case cited by Lockheed Martin.

This argument falls short on several fronts. First, a reasonable factfinder could find that the hazard in this case was created not by Logex's instructions to stand upon the pipe, but by Lockheed's failure to provide a dry approach to a valve situated at ground level. Second, even if a factfinder were to conclude that the hazard was created by Logex's instruction to stand upon the pipe, that does not end the inquiry as to Lockheed's potential liability. An owner or operator is shielded from liability for its independent contractor's negligence only if it does not maintain "operational control" over the contractor's actions. *See, e.g.*, *Zephrin*, 884 F.2d at 213. There is evidence that most or all of the personnel at Michoud that day were Lockheed employees[4] and it is undisputed that Lockheed's own employees stood upon the frozen pipe to access the relief valve. From these facts, a reasonable factfinder could conclude that Lockheed had "operational control" of the facility and that in instructing Lawson to stand on the pipe, Logex was simply following Lockheed Martin's own standard practice.

Lockheed also claims that Logex had the burden of providing tools and other equipment that would have allowed Lawson to fill the tank safely, though the only piece of equipment Lockheed cites is a ladder. *See* Reply at 5 (Rec. Doc. 37).[5] This argument has little force, considering that

---

[4] This fact differentiates the instant case from the so-called "company man" cases, where courts have held that the presence of one company man on site does not necessarily mean that the owner or operator had operational control of the contractor's activities. *See, e.g.*, *Wallace v. Oceaneering Intern.*, 727 F.2d 427, 436 (5th Cir. 1984).

[5] As support for the proposition that "the duty to provide proper tools, equipment and methods of safely performing duties was primarily on Plaintiff's employer," Mem. at 6 (Rec. Doc. 30), Lockheed cites to *Kent v. Gulf States Utility Co.*, 418 So.2d 493 (La. 1982). It is not at all clear to the Court that the case supports this proposition as applied to an operator such as Lockheed. In *Kent*, a highway construction worker was killed when his unsafe use of a large metal "rake" caused the implement to touch Gulf States' electrical wires, which were 25 feet above him. *Id*. at 495-96. His estate argued that Gulf States had a duty to insulate the wires, which were normally uninsulated, for the duration of the project. The court rejected the notion

Lockheed's own safety officer agreed that a ladder would not be a safe means of accessing the relief valve, since there would still be a danger of someone slipping off its rungs due to wet boots. *See* Opp. at Ex. C (Rec. Doc 35) (Howitt deposition, pp. 97-98). Lockheed is unable to cite any other piece of equipment that Logex had a duty to provide that would have made the access to the valve safe. Further, as noted above, given the particular circumstances in this case, a reasonable factfinder might well conclude that the burden to provide equipment that allowed safe access to the valve rested not with Lawson's employer, but with Lockheed. Finally, even if a jury were to conclude that Logex bears some fault for Lawson's injuries, this fact goes to the total amount recoverable by Lawson, not to Lockheed's fault. *See* LA. CIV. CODE art. 2323 (a quantum of fault may be assigned to third parties and plaintiff's recovery accordingly reduced, even if the third party is not a defendant).

**D. Lawson's Contributory Negligence**

Finally, Lockheed argues that Lawson's act of standing on the pipe was a "substantial factor" in bringing about his injuries, which precludes Plaintiff from recovering. Mem. at 2 (Rec. Doc. 13). Louisiana is a comparative fault state, and if plaintiff's acts contribute to his injury, the amount of damages recoverable shall be reduced in proportion to the fault attributable to plaintiff. *See* LA. CIV.

---

that there was any such duty, because it was unforeseeable that road construction would cause someone to come in contact with 25-foot high wires. The language cited by Lockheed comes in a short section of the opinion in which the Louisiana Supreme Court rejected the argument that a project inspector for the Louisiana state highway department had a duty to ensure that the construction worker–who did not work for the state, but for a private contractor–had the tools needed to complete his job safely. The court rejected the argument by noting that the inspector neither provided the worker with equipment nor created the hazardous situation that lead to the worker's injury. Regardless of which defendant in that case Lockheed compares itself to, a reasonable factfinder could conclude that the situations are substantially different, since in this case Lockheed actually created the potentially hazardous situation by not providing safe access to the valve.

CODE art. 2323. Under Louisiana's comparative fault regime, "in any case where the defendant would otherwise be liable to the plaintiff under a negligence or strict liability theory, the fact that the plaintiff may have been aware of the risk created by the defendant's conduct should not operate as a total bar to recovery." *Murray v. Ramada Inns, Inc.*, 521 So.2d 1123, 1134 (La. 1988). That Lockheed may be able to show that Lawson bears some responsibility for his injuries does not mean that Lockheed is entitled to judgment as a matter of law.

### III. CONCLUSION

The Court's conclusion today is not meant to suggest that Lockheed actually did breach a duty to Lawson, or that Lawson will recover anything at all. This Court is not the factfinder. Its task is much simpler: to determine whether a reasonable factfinder could conclude that Lockheed breached a duty to Lawson. Given the evidence presented in depositions and in other documents, and especially given the specific context in which this injury was sustained, the Court concludes that a reasonable factfinder *could*–though not  necessarily *will*–conclude that Lockheed Martin is liable for not providing a safe workplace, and specifically for not providing a non-skid concrete surface and safe access to the relief valve. Accordingly, the motions are **DENIED**.

New Orleans, Louisiana, this 25th day of November, 2008.

**KURT D. ENGELHARDT**
**United States District Judge**

11